[Crim. No. 13620. First Dist., Div. Three. Aug. 12, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
TAFT WILSON, JR., Defendant and Appellant.

**COUNSEL**

Douglas R. Schmidt, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Peter Silten, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SCOTT, J.**—Taft Wilson, Jr., appeals from his conviction, after trial by jury, of violation of Penal Code, section 664 (attempt to commit second degree robbery) and Penal Code, section 220 (assault with intent to commit robbery).

I. ■ Wilson correctly urges that the court erred in failing to give *sua sponte* CALJIC 2.72 (corpus delicti must be proved independent of admission). (*People v. Howk* (1961) 56 Cal.2d 687, 707 [16 Cal.Rptr. 370, 365 P.2d 426].) However, the error was not prejudicial because the evidence independent of the confession or admission established Wilson's guilt. (*People v. Holbrook* (1955) 45 Cal.2d 228, 234 [288 P.2d 1].)

The failure to give the instruction does not constitute reversible error if upon reweighing of the evidence it does not appear reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error. (*People v. Beagle* (1972) 6 Cal.3d 441, 456 [99 Cal.Rptr. 313, 492 P.2d 1]; *People v. Watson* (1956) 46 Cal.2d 818, 836

[299 P.2d 243].) Here the testimony of the victim and the two special patrol officers who witnessed a portion of the crime was sufficient to convict Wilson without his statement admitting guilt.

II. Although the objection was not made below and is raised for the first time on appeal, the court properly instructed the jury in the language of CALJIC 9.07 as modified (insulting words not justification for an assault), followed by an instruction defining assault with intent to commit robbery. The jury was thus fully instructed regarding the element of intent.

III. ██ Wilson next urges that the court erred in giving CALJIC 17.02 (several counts—different occurrences—jury must agree), but instead should have given CALJIC 17.03 (two counts same occurrence—only one crime). We agree.

Where one offense is necessarily included in another, double *punishment* is prohibited (*People v. Knowles* (1950) 35 Cal.2d 175 [217 P.2d 1]; Pen. Code, § 654), and double *conviction* is also prohibited (*People v. Greer* (1947) 30 Cal.2d 589, 597-598 [184 P.2d 512]). This makes the question of double punishment moot (*People v. Bauer* (1969) 1 Cal.3d 368, 375 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]). Penal Code, section 664 (attempted robbery) is necessarily included within Penal Code, section 220 (assault with intent to commit robbery). An assault with intent to commit a crime necessarily embraces an attempt to commit said crime. (*People v. Rupp* (1953) 41 Cal.2d 371, 382 [260 P.2d 1].)

Since Wilson can be convicted of only one of the two counts charged, he is correct in asserting that the court erred in giving CALJIC 17.02.

However, this error does not constitute reversible error. Where the evidence supports the conviction of the greater crime and the jury has erroneously convicted defendant of both the greater and a lesser included offense, it becomes necessary to reverse the lesser offense, for although appellant can be convicted of either count, he cannot be . convicted of both. (*People v. Greer, supra,* 30 Cal.2d at p. 599; *People v. Degnen* (1925) 70 Cal.App. 567, 577-578 [234 P. 129]; *People v. Kynette* (1940) 15 Cal.2d 731 [104 P.2d 794].)

"It seems obvious that if appellant must go unpunished under either of the verdicts, it must be under the one finding him guilty of the lesser

offense, not the one convicting him of the greater." (*People* v. *Degnen,* *supra,* at p. 578.)

IV. Wilson next contends that the punishment imposed upon him is tantamount to a cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution and is "cruel or unusual" punishment under the California Constitution, article I, section 17. (*In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921]; *People* v. *Wingo* (1975) 14 Cal.3d 169 [121 Cal.Rptr. 97, 534 P.2d 1001].)

Wilson admitted a prior misdemeanor conviction for petty theft (Pen. Code, § 488), thus the minimum sentence was aggravated from one year to five years in state prison (Pen. Code, § 666). At sentencing, appellant was committed to state prison for the term prescribed by law. In effect, the sentence imposed on count II (assault with intent to commit robbery) was an indeterminate sentence of five to twenty years.

*Lynch* determined that the punishment range of certain crimes was "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity" and was therefore in violation of section 6, article I of the California Constitution. (8 Cal.3d at p. 424.) ". . . when a defendant under an indeterminate sentence challenges that sentence as cruel or unusual punishment in violation of the California Constitution, the test is whether the maximum term of imprisonment permitted by the statute punishing his offense exceeds the constitutional limit, regardless of whether a lesser term may be fixed in his particular case by the Adult Authority." (8 Cal.3d at p. 419.)

The *Lynch* court set forth three tests to determine the constitutionality of punishment prescribed for given offenses:

The first test involves an examination of the nature of the offense and/or the offender. The crime of assault with intent to commit robbery involves the threat of force or actual force coupled with the intent to commit an inherently dangerous felony, robbery; as such, both offenses and the offender pose a serious threat to society to justify imposition of such a severe sentence.

The second *Lynch* test requires a comparison of the challenged offense with those in the same jurisdiction which must be deemed more serious. If there "are found more serious crimes punished less severely than the

offense in question, the challenged penalty is to that extent suspect." (8 Cal.3d at p. 426.)

There are crimes which arguably may be considered more serious but which have lesser maximum penalties. These include manslaughter (15 years (Pen. Code, § 193)); assault with intent to murder (14 years (Pen. Code, § 217)); mayhem (14 years (Pen. Code, § 204)). Also, there are crimes which arguably are less serious but which have greater maximum penalties, such as first degree burglary (life (Pen. Code, § 461)); lewd acts on a child under 14 (life (Pen. Code, § 288)); possession of narcotics with two priors (life (Health & Saf. Code, § 11350)), and others not necessary to detail here.

However, "[t]his does not per se compel a conclusion that the challenged statute is unconstitutionally excessive, since we have never required mathematical exactitude in fitting punishment to crime." (*People* v. *Wingo, supra,* 14 Cal.3d at pp. 178-179.)

The third *Lynch* test compares the challenged penalty provision with the penalty provisions imposed in other jurisdictions for the same offense. In those states that punish assault with intent to commit robbery, as a completed offense, Alabama, Delaware, Florida, New Hampshire, Pennsylvania, Utah, Virginia, Washington and West Virginia have penalty provisions similar to or greater than California.[1] Alaska, the District of Columbia, Michigan, Nebraska, Ohio and Tennessee have penalty provisions with a 15-year maximum; and Arizona, Colorado, Idaho and Wyoming have penalty provisions with a 14-year maximum.[2]

Thus, California's maximum sentence for assault with intent to commit robbery is not grossly out of proportion to sentences for a similar crime in other jurisdictions.

It does not appear that appellant has met the burden of showing the possible maximum term of 20 years was cruel and/or unusual punishment for a crime such as violation of Penal Code, section 220, or that the

[1]Code of Ala., Title 14 § 38; Del. Code Ann., Title 11, § 812; Fla.Stats.Anno., § 784.06; N.H.Rev.Stats.Anno. (1966) § 585:23; Purdon's Pa.Stats.Anno., § 1103; Utah Code Anno. (1953) § 76-51-3; Code of Va. (1950) § 18.1-91; Rev. Code of Wash.Anno., § 9.01.070; West Va. Code, § 61-2-12.

[2]Alaska Statutes (1962) § 11.15.160; D.C. Code Encyclopedia, § 22-501; Mich.Stats. Anno., § 750.88; Rev.Stats. Neb., § 28-409; Page's Ohio Rev.Code Anno., § 2901.24; Tenn.Code Anno., § 39-607; Ariz.Rev.Stats., § 13-252; Colo.Rev.Stats. (1963) § 4-2-34; Ida.Code, § 18-907; Wyo.Stats. (1957) § 6-69.

punishment is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.

V. Appellant's next assignment of error is that the trial court abused its discretion (Evid. Code, § 352) by ruling that a prior felony conviction of burglary by appellant in 1965 could be used by the prosecution for impeachment purposes.

In *People* v. *Beagle* (1972) 6 Cal.3d 441, 453 [99 Cal.Rptr. 313, 492 P.2d 1], the court held that "when sections 788 and 352 [Evidence Code] are read together they clearly provide discretion to the trial judge to exclude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice."

The court went on to emphasize that there were no rigid standards to govern that which in each instance depends on sound exercise of the judicial discretion given trial judges by virtue of Evidence Code, section 352. "Among the factors that a trial judge may consider in determining whether to exclude evidence of prior convictions is the bearing such conviction has on veracity . . ." (*People* v. *Wingo* (1973) 34 Cal.App.3d 974, 981 [110 Cal.Rptr. 448].)

The general rule is that felony convictions bearing on veracity are admissible. (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.) "Accordingly, acts of deceit, fraud, cheating or stealing are regarded as conduct reflecting on a man's honesty and integrity . . ." (*People* v. *Wingo, supra,* 34 Cal.App.3d at p. 981; *Gordon* v. *United States* (1967) 383 F.2d 936, 940-941; *People* v. *Beagle, supra,* at p. 453.)

Appellant also contends that his prior felony conviction was too remote and should have been excluded by the trial court. However, remote convictions are not to be disregarded merely because of remoteness. The question is merely one element to be considered in determining whether or not the probative value of the prior conviction will be outweighed by its prejudicial effect. (*People* v. *Stewart* (1973) 34 Cal.App.3d 244 [109 Cal.Rptr. 826]; Evid. Code, § 352.)

 Another factor to be considered in determining whether a prior felony conviction is remote and should be excluded is whether the accused has followed a "legally blameless life" following the prior

conviction. If he has, the prior conviction should be excluded. (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453; *People* v. *Wingo, supra,* 34 Cal.App.3d at p. 981.)

Wilson has not followed a "legally blameless life" since his conviction for burglary in 1965. In 1968, he was charged with simple burglary and possession of stolen property. In 1970, he served one year for theft and possession of stolen property. In 1972, appellant was arrested three times for automobile theft. He served nine months in jail. In 1973, he was arrested on three separate occasions and charged with theft. In February and March of 1974, appellant was arrested and charged with robbery and the charge was dismissed.

It is clear from the above arrest and prison record that the court did not abuse its discretion in admitting the prior felony conviction (burglary) for the purpose of impeachment.

VI. ■ Finally, appellant argues that evidence of a prior uncharged offense of robbery should have been excluded.

The general rule is that evidence of other crimes is inadmissible when it is offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged, because the probative value of such evidence is outweighed by the prejudicial effect. (*People* v. *Peete* (1946) 28 Cal.2d 306, 314-315 [169 P.2d 924]; *People* v. *Sam* (1969) 71 Cal.2d 194, 203 [77 Cal.Rptr. 804, 454 P.2d 700]; *People* v. *Kelley* (1967) 66 Cal.2d 232, 238 [57 Cal.Rptr. 363, 424 P.2d 947].)

However, under certain limited circumstances when the evidence is sufficiently relevant, it may be admitted even though it embraces evidence of the commission of another crime. (*People* v. *Peete, supra,* at p. 315.)

In determining questions of relevancy, certain guidelines have been recognized. "It is settled that evidence of other crimes is ordinarily admissible where it tends to show guilty knowledge, motive, intent, or presence of a common design or plan." (*People* v. *Kelley, supra,* at p. 239; *People* v. *Archerd* (1970) 3 Cal.3d 615, 638.) Evidence Code, section 1101, subdivision (b) provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts."

An examination of the record in this case discloses that the appellant's argument of undue prejudice (Evid. Code, § 352) is without merit. First, the court admonished the jury prior to the introduction of the evidence relating to the prior uncharged robbery, that its limited purpose was to show intent and in no way was appellant on trial for the prior offense. Second, Officer D'Elia's testimony was offered by the prosecution merely to rebut appellant's claim that he did not assault the victim with the intent to steal, and not as an attempt to show criminal disposition. Third, appellant's arguments of dissimilar circumstances because of time differences and the fact that the victim in the prior uncharged offense was black while Chiappe was white, are not convincing since the prior uncharged offense was committed in approximately the same downtown area and involved the taking of the property of another by force. Fourth, since both out-of-court admissions allegedly made by appellant are inadmissible to prove the *corpus delicti* and since appellant has admitted the *actus reus*, the admission of the prior uncharged offense was necessary to prove the very crucial element of appellant's intent.

█ Finally, it is to be noted that Officer D'Elia's testimony regarding a statement made by the victim in an attempt to catch him was admissible hearsay. Evidence Code, section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." (*White* v. *Los Angeles Ry. Corp.* (1946) 73 Cal.App.2d 720 [167 P.2d 530].)

Judgment is reversed and the trial court is directed to dismiss count I, Penal Code, section 664 (attempted second degree robbery). Judgment is affirmed as to count II, Penal Code, section 220 (assault with intent to commit robbery).

Draper, P. J., and Good, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 9, 1975.

---

*Retired judge of the superior court, sitting under assignment by the Chairman of the Judicial Council.