* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of FACTUAL AND PROCEDURAL BACKGROUND and parts I, III, IV and V of the DISCUSSION.
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1490 
OPINION
Defendant Scott Campbell was convicted by jury of the second degree murder of Daniel Willis (Pen. Code, § 187; all subsequent undesignated section references are to the Penal Code). The jury also found that he personally used a shotgun during the murder (§ 12022.5, subd. (a)). He was acquitted of assaulting Robert McAlvain with a firearm (§ 245, subd. (a)(2)).
Following his sentence of 20 years to life in state prison (15 years to life on the murder conviction plus an upper consecutive term of 5 years for the gun-use enhancement), defendant appeals, contending: (1) he suffered ineffective assistance of counsel because his counsel's unawareness of a recent change in a statute led counsel inadvertently to open the door to evidence of defendant's violent conduct, which undermined his defense; (2) he was improperly impeached with a conviction for felony vandalism; (3) he was convicted on a standard of proof less than required by due process; (4) cumulative error denied him a fair trial; and (5) the trial court improperly aggravated the gun-use enhancement sentence. In an unpublished portion of this opinion, we conclude only defendant's last contention has merit. In this published portion of the opinion, we conclude defendant was properly impeached with a prior conviction for felony vandalism. We shall remand the matter for resentencing on the enhancement and otherwise affirm.
 FACTUAL AND PROCEDURAL BACKGROUND*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 DISCUSSION I*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 II
Defendant contends he suffered prejudice from the trial court's ruling that he could be impeached with a 10-year-old prior conviction for felony vandalism. (§ 594.) He asserts first that felony vandalism is not a crime of moral turpitude, and second that even if it is such a crime the trial court should have excluded the evidence of his conviction under Evidence Code section 352 (§ 352). He finally asserts that the error was prejudicial under *Page 1492 
the Watson[6] standard. We conclude the trial court did not err by admitting the prior.
 A. Moral turpitude. (1) Under Evidence Code 788, a defendant who testifies may be impeached with a prior conviction of any felony evincing moral turpitude, defined as the "general readiness to do evil." (People v. Castro (1985) 38 Cal.3d 301, 313-316 [211 Cal.Rptr. 719, 696 P.2d 111].) Only if "the least adjudicated elements of the conviction necessarily involve moral turpitude" is the conviction admissible for impeachment. (Id. at p. 317.)
The "least adjudicated elements" test means that "from the elements of the offense alone — without regard to the facts of the particular violation — one can reasonably infer the presenceof moral turpitude." (People v. Thomas (1988) 206 Cal.App.3d 689, 698 [254 Cal.Rptr. 15], italics added; accord, People v.White (1992) 4 Cal.App.4th 1299, 1303 [6 Cal.Rptr.2d 259];People v. Bautista (1990) 217 Cal.App.3d 1, 6 [265 Cal.Rptr. 661] .) In other words, a court need not determine that a criminal statute could be violated only with evil intent in order to find that a conviction under that statute evinces moral turpitude, because it is possible to imagine a set of circumstances under which almost any statute might be violated without evil intent; only a "`substantial assurance that the credibility of a witness is adversely affected by his having suffered [a] conviction'" for a given offense is required. (Thomas, supra, 206 Cal.App.3d at p. 698, original italics, quoting People v. Castro, supra, 38 Cal.3d at p. 313.)
(2a) Defendant was convicted of felony vandalism in 1983 pursuant to section 594, which provided in relevant part at the time of the offense: "(a) Every person who maliciously (1) defaces with paint or any other liquid, (2) damages or (3) destroys any real or personal property not his own, in cases otherwise than those specified by state law, is guilty of vandalism. [¶] (b)(1) If the amount of defacement, damage or destruction is one thousand dollars ($1,000) or more, vandalism is punishable by imprisonment . . . in the county jail, imprisonment in the state prison not to exceed one year and one day, a fine of five thousand dollars ($5,000), or both such fine and imprisonment."[7] (Stats. 1982, ch. 1413, § 3, p. 5402, italics added.)
No published case has considered whether a felony conviction under section 594 evinces moral turpitude, as the trial court found. However, the *Page 1493 
trial court's ruling is supported by the language of the statute and by case law construing analogous statutes.
As defendant acknowledges, the term "maliciously," defining the requisite mens rea of the offense, "import[s] a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (§ 7.) Moreover, section 594, subdivision (a), which was enacted as section 594 in the original 1872 Criminal Code as a "preliminary catch-all provision" to what is now title 14 of the Criminal Code, dealing with malicious injury to property (2 Witkin 
Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Property, § 678, pp. 761-762), still follows the language of the original malicious-mischief statutes in specifying "malice" as the mens rea of the offense. (3) "It is generally held that [the term `malice' in such statutes] calls for more than mere intentional harm without justification or excuse; there must be a wanton and wilful (or `reckless') disregard of the plain dangers of harm, without justification, excuse or mitigation." (Id. at p. 762.) Such a state of mind betokens that "general readiness to do evil" which constitutes moral turpitude. (See People v. Castro,supra, 38 Cal.3d at p. 314.)
In arguing to the contrary, defendant first suggests that felony vandalism is not a specific-intent crime. Even assuming that is so, the distinction is irrelevant to the question of moral turpitude. (4) ". . . [T]he distinction between general[-]intent and specific[-]intent crimes is at bottom founded upon a policy decision regarding the availability of certain defenses." (People v. Gutierrez (1986) 180 Cal.App.3d 1076, 1081 [225 Cal.Rptr. 885]; see also People v. Hood
(1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370] [difference between general and specific intent "only a linguistic one"].) It is not based on the premise that specific-intent crimes reveal moral blameworthiness while general-intent crimes do not, since the perpetrator of a general-intent crime may be found morally blameworthy. (Gutierrez, supra, 180 Cal.App.3d at p. 1084.) Furthermore, numerous general-intent crimes have been held to evince moral turpitude. (See, e.g., People v. White, supra, 4 Cal.App.4th at p. 1301 [§ 246 (shooting at inhabited building)]; People v.Brooks (1992) 3 Cal.App.4th 669, 671 [4 Cal.Rptr.2d 570] [§ 273d (corporal punishment of child resulting in trauma)];People v. Zataray (1985) 173 Cal.App.3d 390, 400 [219 Cal.Rptr. 33] [§ 207 (simple kidnapping)].)[8]
(2b) Defendant next asserts that the trial court "set too low a standard to decide whether a crime was one of moral turpitude." He bases this claim *Page 1494 
solely on the trial court's remark during argument on the issue: "I am going to have a very difficult time defining what crime does not involve moral turpitude, because any crime, anytimesomebody even possesses marijuana, that is doing evil. Possessingmarijuana is in this Court's judgment doing evil." (Italics added.) Correctly noting that simple possession of marijuana is not, in fact, a crime of moral turpitude (People v. Valdez
(1986) 177 Cal.App.3d 680, 697 [223 Cal.Rptr. 149]), defendant apparently construes the trial court's comment to mean that the court wrongly believed all felonies evince moral turpitude. However, even if the trial court did entertain such a view, it would not compel us to find that the court's ruling was error: it is axiomatic that we review the trial court's result, not its rationale. (California Aviation, Inc. v. Leeds (1991)233 Cal.App.3d 724, 730-731 [284 Cal.Rptr. 687].) In any event, the comment quoted out of context by defendant does not support his conclusion. It is clear from the full context of the argument on this issue that the trial court understood the relevant legal standard, but was simply expressing its own feeling that the standard did not give the clearest possible guidance to lower courts.
Defendant next asserts that one cannot infer moral turpitude from a conviction under section 594 because that statute criminalizes spray-painting graffiti on another person's property or causing other "trivial" damage. (In re Trinidad V. (1989)212 Cal.App.3d 1077, 1079 [261 Cal.Rptr. 39]; People v.Kahanic (1987) 196 Cal.App.3d 461, 463, 465 [241 Cal.Rptr. 722] .) There are two answers to this contention. First, the desecration of California's visual landscape by graffiti is not a "trivial" matter at all. Moreover, the statute under which defendant was convicted required the vandalism to result in at least $1,000 in damage. That amount of damage is not "trivial."
Taking up a suggestion offered in People v. Castro, supra
(38 Cal.3d at p. 316, fn. 11), defendant next turns to federal immigration cases which have considered the issue of moral turpitude as to various offenses in the context of deportation proceedings. (See generally, Annot., What Constitutes "Crime Involving Moral Turpitude" Within Meaning of §§ 212(a)(9) and 241(a)(4) of Immigration and Nationality Act (8 USCS §§ 1182(a)(9), 1251(a)(4)), and Similar Predecessor Statutes Providing for Exclusion or Deportation of Aliens Convicted of Such Crime (1975) 23 A.L.R.Fed. 480.) Given that ample California case law considering moral turpitude as to California statutes has arisen since Castro was decided, the usefulness of searching foreign decisions for guidance on this question has diminished.[9] In any event, defendant cites no immigration cases construing section 594, and *Page 1495 
none of the cases he cites which construe foreign statutes apply the standards set forth in Castro and its progeny. Therefore these cases do not assist him.[10]
Lastly, defendant cites People v. Mansfield (1988)200 Cal.App.3d 82 [245 Cal.Rptr. 800], which held that felony battery (§ 243, subd. (d)) is not a crime of moral turpitude according to "common sense and generally accepted community standards" because "[t]he average person walking down the street would not believe that someone who [merely] pushes another is a culprit guilty of moral laxity or `general readiness to do evil,' even if the push was willful and results in serious injury." (200 Cal.App.3d at pp. 88-89.) However, even assuming for the sake of argument the holding of Mansfield is correct, it does not aid defendant because felony battery, unlike felony vandalism, does not require a mens rea of malice. The intent for felony battery is the same as for simple battery — merely to commit an unwanted touching, an intent which need not show readiness to do evil; only the result (serious bodily injury) differs.[11] (200 Cal.App.3d at pp. 87-88.) Since, as we have explained, the mens rea of malice required for any offense under section 594 is sufficient to establish a "readiness to do evil" (People v. Castro, supra,
38 Cal.3d at p. 313), felony vandalism is not analogous to felony battery for purposes of moral turpitude. *Page 1496 
For all the above reasons, the trial court's ruling on this issue was correct.
 B. Evidence Code section 352 (5) After ruling that felony vandalism was a crime of moral turpitude, the trial court exercised its discretion under section352 to allow the prior to be used for impeachment. Citing the four-factor test for the propriety of admitting prior felony convictions for impeachment stated in People v. Muldrow
(1988) 202 Cal.App.3d 636, 644 [248 Cal.Rptr. 891] — "(1) [w]hether the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of a prior conviction; (3) whether the prior conviction is for the same or substantially similar conduct to the charged offense; and (4) what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions" — defendant asserts that all applicable factors weighed in favor of excluding his prior conviction. He reasons that felony vandalism does not reflect on honesty and "only marginally" reflects on integrity, that the crime occurred 10 years before the trial in this case and defendant had led a "legally blameless life" (cf. People v.Wilson (1975) 50 Cal.App.3d 811, 818-819 [123 Cal.Rptr. 663]) in the interim, and that the conduct in the prior act was similar to that charged herein in that both acts involved "irrationality" or "hotheadedness."[12] We are not persuaded.
Here, none of the three Muldrow factors invoked by defendant works in his favor. First, any felony conviction evincing moral turpitude, as here, "has some `tendency in reason' (Evid. Code, § 210) to shake one's confidence in [a witness's] honesty." (People v. Castro, supra, 38 Cal.3d at p. 315.)[13] Second, although the vandalism conviction was 10 years old, defendant had not led a legally blameless life in the interim: he had been convicted twice for driving under the influence (Veh. Code, § 23152, subd. (a)) and once for *Page 1497 
driving an unregistered vehicle. (Veh. Code, § 4000, subd. (a).)[14] Finally, assuming there was any danger that the jury might have perceived a pattern of "irrationality" or "hotheadedness" linking the prior conviction and the present charges, this danger was avoided because the jury did not learn the facts underlying defendant's prior conviction. After the trial court ruled it admissible, defendant's counsel asked defendant whether he had been convicted of vandalism in 1983; defendant answered "Yes"; and the prosecutor asked no questions about it.
Because defendant has failed to show any grounds on which his prior felony conviction should have been excluded, we need not consider defendant's claim of prejudice from its admission.
 III-V*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 DISPOSITION
The matter is remanded to the trial court for resentencing on the enhancement. In all other respects the judgment is affirmed.
Puglia, P.J., and Sparks, J., concurred.
Appellant's petition for review by the Supreme Court was denied June 29, 1994.
[6] People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243].
[7] Subdivision (b) has been amended several times since 1983 in respects not pertinent to this appeal. (See Stats. 1984, ch. 1432, § 3, p. 5022; Stats. 1985, ch. 781, § 1, p. 2520; Stats. 1988, ch. 38, § 1, p. 241.)
[8] These offenses were defined as general-intent crimes inPeople v. Froom (1980) 108 Cal.App.3d 820, 826 [166 Cal.Rptr. 786] (§ 246); People v. Atkins (1975) 53 Cal.App.3d 348, 358 [125 Cal.Rptr. 855] (§ 273d); and People v. Thornton (1974)11 Cal.3d 738, 765 [114 Cal.Rptr. 467, 523 P.2d 267] (§ 207).
[9] But see People v. Brooks, supra, 3 Cal.App.4th at pages 671-672.
[10] Defendant cites six cases. Only two construe statutes which, like section 594, include the term "malicious" or "maliciously" in defining the mens rea for the offense. In the earlier case, the Board of Immigration Appeals (Board) construed a former Delaware "malicious mischief" statute which provided in pertinent part: "Whoever unlawfully, maliciously and mischievously destroys or injures any real or personal property, or any other thing of value." Relying on its own precedent in the absence of Delaware case law, the Board held that the statute covered both crimes which involved moral turpitude (defined as "offenses . . . which . . . are inherently base and vile") and those which did not, then applied its own "well-established rule that we must look to the record of conviction for a determination of whether the crime committed involves moral turpitude." (Matter of N. (1959) 8 I. N. Dec. 466, 467-468.) In the later case, the Board followed the same method of analysis in construing a former Florida statute defining "malicious trespass." (Matter of E. (1979) 16 I. N. Dec. 659, 661.) Obviously, the approach to moral-turpitude analysis taken in these cases does not involve either the "readiness to do evil" test or the "least adjudicated elements" test as they have developed in California law.
The remaining cases defendant cites are even less to the point, since the statutes construed in those cases defined the target offenses in terms of "unlawful" or "willful" conduct, not "malicious" conduct. (Matter of B. (1947) 2 I. N. Dec. 867, 868; Matter of C. (1947) 2 I. N. Dec. 716, 718-719; Matterof M. (1947) 2 I. N. Dec. 686, 690; Matter of M. (1946) 2 I. N. Dec. 469, 471.)
[11] Section 242 (battery) defines the offense as "any willful and unlawful use of force or violence upon the person of another"; however, "`[t]he word "violence" has no real significance,'" since any use of force, however slight, is enough to constitute the offense. (Mansfield, supra, 200 Cal.App.3d at pp. 87-88.)
Section 243, subdivision (d), provides: "When a battery is committed against any person and serious bodily injury is inflicted on the person, the battery is punishable by imprisonment in the county jail for a period of not more than one year or imprisonment in the state prison for two, three, or four years."
[12] As defendant notes, the fourth prong of the Muldrow test — whether the fear of being impeached will prevent the defendant from testifying — does not apply here because the trial court reserved its ruling on the admissibility of the prior until after defendant had testified. Although this procedure is not customary or desirable, it is not error. (People v. Washington (1989)211 Cal.App.3d 207, 214 [259 Cal.Rptr. 307].)
[13] Arguing to the contrary, defendant quotes language fromPeople v. Wheeler (1992) 4 Cal.4th 284 [14 Cal.Rptr.2d 418,841 P.2d 938] to the effect that certain crimes are "less forceful indicator[s] of immoral character" than others. (Id.
at p. 296.) The crimes so described in Wheeler are misdemeanors, which the court contrasted to felonies in this regard. (Ibid.) Far from holding that some felonies do more to prove "immoral character" than others, as defendant suggests,Wheeler impliedly rejects any such line-drawing.
[14] In any event, a 10-year-old conviction is not too remote in time to be admissible under section 352 (People v. Lewis
(1987) 191 Cal.App.3d 1288, 1297 [237 Cal.Rptr. 64]; People v.Wilson, supra, 50 Cal.App.3d at p. 819.)
* See footnote, ante, page 1488. *Page 1498