Filed 7/2/13  P. v. Venegas CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GREGORIO MARIN VENEGAS,<br><br>        Defendant and Appellant. | A133996<br><br>(San Mateo County<br>Super. Ct. No. SC072740) |

A jury convicted defendant Gregorio Marin Venegas of assaulting and inflicting great bodily injury upon Salvador Flores.  At trial, the district attorney questioned defendant about an earlier incident, then being separately charged as misdemeanor vandalism, in which he lit his ex-girlfriend's clothes on fire.  Defendant asserts evidence of this prior misconduct was inadmissible and the prosecutor's questioning and argument to the jury violated his Fifth Amendment right against compelled self-incrimination.  We reject defendant's assertions and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant lived with his mother in a house in South San Francisco.  The victim Flores and his girlfriend, Margarita Hernandez, rented, from defendant's mother, a studio apartment located on the same property.

Just after midnight on February 28, 2010, defendant saw Flores's car parked in defendant's driveway, a place Flores was told he could not park.  According to Flores's girlfriend Hernandez, defendant came over to the studio and banged on the door—a sliding glass patio door—and, calling Hernandez by name, told her to tell Flores to move

1

his car. Hernandez responded that Flores had been drinking and the car would have to wait until morning. Defendant insisted she rouse Flores from bed or he would damage the car. Flores awoke on his own and told Hernandez and defendant it should wait until the morning.

The two men, defendant still outside by the door and Flores in the studio, then began to argue. Flores claims he then begrudgingly said he would move the car and started walking toward the door. According to Flores, he went outside, where defendant struck him, sending him to the ground for, according to Hernandez, three minutes. Flores then got up, walked forward—away from the studio and toward the car—and defendant struck Flores in the face and Flores fell to the ground a second time. While Flores was down, defendant hit or kicked him, saying "this is the way I wanted to have you." Defendant then left. Flores had blood on his face and could not walk.

Defendant's version of events was somewhat different. After knocking on Flores's door, he saw Flores sitting awake on a bed just inside the studio. Defendant asked Flores to move the car, but Flores refused. Defendant repeated his demand, saying he did not want to have to call a towing company. Defendant and Flores began to argue. Then, Flores came towards the door. Defendant claims Flores, looking intoxicated, approached him and took the first swing. Defendant then hit Flores, who fell to the ground. Flores, after blacking out for "a split second," got up, threw two punches at the air, after which defendant hit Flores again two or three times. Flores, again on the ground, grabbed defendant's leg and only let go after defendant hit him one last time. Defendant then called the police.

The district attorney filed a two-count information on January 31, 2011, accusing defendant of assault with force likely to cause great bodily injury (Pen. Code, § 245,[1] subd. (a)(1)) and inflicting serious bodily injury (§ 243, subd. (d)). The information further alleged, with respect to each count, defendant personally inflicted great bodily

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

harm (§ 12022.7, subd. (a)) rendering each count a "serious felony" (§ 1192.7, subd. (c)(8)).

Trial began on August 8, 2011. On August 10, 2011, toward the end of the prosecution's case, the district attorney informed the trial court he wanted to impeach defendant, if he testified, with evidence he previously vandalized an ex-girlfriend's clothes. The court requested briefing, and so, later in the day, the district attorney filed a written motion. The motion stated defendant had, as witnessed by his mother, "burnt all of his girlfriend['s] clothes following an argument" and that this conduct constituted vandalism under Penal Code section 594. It cited criminal cases pending against defendant, presumably encompassing the vandalism charge, case Nos. NM395165 and NM394570. Even though these cases had not proceeded to any final determination, the motion confusingly requested admission of both defendant's conduct and his "convictions."

When defendant took the stand near the end of the day on August 10, he asserted Flores threw the first punch and that he acted in self-defense. On cross-examination, this exchange occurred:

"Q. And your—Do you feel that you have a quick temper?
"A. No.
"Q. No?
"A. No.
"Q. I'm going to ask you about an incident that took place on March 3rd of 2010.
"A. Uh-huh.
"Q. Do you recall which incident I'm asking you about?
"A. No, I don't.
"Q. And do you know an individual by the name of Magdalena?
"A. Yes.
"Q. And who is Magdalena to you?
"A. Magdalena was my girlfriend at that time.
"Q. Your ex-girlfriend?
"A. Yes.
"Q. So, do you recall what happened on May 3rd of 2010?
"A. Um, if you're talking about when—the time I—

3

"THE COURT:  You can answer that with a yes or a no.

"WITNESS:  Yes.

"[DISTRICT ATTORNEY]:  Q.  Okay.  Did you do something to her personal property?

"A.  Yes.

"Q.  What did you do?

"A.  I vandalized her clothes.

"Q.  What did you do to the clothes?

"[DEFENSE COUNSEL]:  Objection, Your Honor.  I think we—may we approach?

"THE COURT:  Yes.

"(Discussion between Court and counsel not reported.)

"[DISTRICT ATTORNEY]:  Q.  Okay.  Again, just to be specific, I'm asking you about an incident that happened May 3rd of 2010, okay?  Do you understand?

"A.  Yes.

"Q.  There was an incident that occurred at this residence—

"THE COURT:  We've already—

"[DISTRICT ATTORNEY]:  Q.  —in the backyard.

"THE COURT:  We've already been there and done that.  There was a vandalism.

"[DISTRICT ATTORNEY]:  Q.  What was the nature of the vandalism you did to your ex-girlfriend's clothing?

"A.  I destroyed her clothes.

"Q.  I want you to be specific.  What did you do to your ex-girlfriend's clothes in that backyard?

"[WITNESS:]  A.  I burned—I burned her clothes.  If you're asking me to be specific, I –

"THE COURT:  That's fine.  Thank you."

At no time did defendant put objections to this exchange on the record.

During closing argument the following day, the district attorney argued:

"His prior conduct shows him to be untrustworthy.  And he can't admit to the conduct.  Now, specifically, that's concerning the actions that came out that he had burned his girlfriend's clothing."

And continued:

"When you start pressing him on those things [such as which leg Flores grabbed], he starts not having answers.

4

"And I asked him a simple question of what happened in March—excuse me— actually, it was in May of 2010. There was an incident that can be presented to you that the Judge, under the law, allows, for you to weigh his credibility. There's this issue that happens in May where he burns his girlfriend's clothes.

"When we start to ask defendant about that, you have to look at the way he's answering that question. He's answering in the way he wants to. He says, well, I vandalized my girlfriend's clothing. That's a very legal answer to what he did. I asked him again, pulling the truth out of him, okay. You know, and he knows we know what happened.

"All right. Gregorio, why don't you admit what happened. Well, okay. I destroyed my girlfriend's clothes. All right. Why don't you actually tell us what you did. Well, actually, I burned all of my girlfriend's clothes. Okay. It took three questions to get the truth out of him. And he was holding back. He doesn't want to take responsibility for what he did."

Defense counsel never objected during this portion of the district attorney's closing argument.

Defendant's closing argument focused on defendant's testimony that Flores was the aggressor and defendant acted in self-defense.

After a few hours of deliberation, the jury found defendant guilty of both counts and the section 12022.7 enhancement. On October 4, 2011, the trial court imposed a suspended sentence and placed defendant three years' probation, which included a six-month term in county jail. Defendant filed a notice of appeal on December 2, 2011.

## DISCUSSION

Defendant asserts the trial court should have disallowed questions and argument about the May 2010 vandalism.

### Waiver

Defendant has forfeited review of his claims on appeal because he did not first raise them as objections in the trial court. Failure to object to alleged erroneous evidentiary rulings or instances of improper argument waives these issues for appellate review. (Evid. Code, § 353 [no reversal "by reason of the erroneous admission of evidence" unless a timely, specific objection made and the erroneous admission was prejudicial]; *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6; *People v. Visciotti*

5

(1992) 2 Cal.4th 1, 51–52, 54 [failure to raise objection to evidence "bars reversal"; failure to object to alleged misconduct fails to preserve issue].)

This is not a case where the parties or trial court later put unrecorded, sidebar objections on the record, nor is this a capital case in which the government bore responsibility for assuring a record of proceedings was being kept.  (Cf. *People v. Dykes* (2009) 46 Cal.4th 731, 800, fn. 16 [addressing both scenarios]; *People v. Cummings* (1993) 4 Cal.4th 1233, 1334–1335, fn. 70 [distinguishing capital cases]; see also Code Civ. Proc., § 269, subd. (a)(2) [a reporter's transcript of proceedings is required "on the order of the court or at the request of the prosecution, the defendant, or the attorney for the defendant"]; *People v. Turner* (1998) 67 Cal.App.4th 1258, 1264 [under section 269, non-capital defendants have only "a statutory right to have the proceedings recorded . . . , which right can be waived"]; *People v. Manson* (1976) 61 Cal.App.3d 102, 214 ["In the absence of request that a record be made of a conference between court and counsel, none is required."].)

### *Ineffective Assistance of Counsel*

Realizing this court might find his appellate arguments forfeited, defendant has asked us to consider whether his trial counsel's failure to object constituted ineffective assistance of counsel.  (See, e.g., *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1130 [addressing whether forfeiture resulted in ineffective assistance].)

"To prevail on a claim of ineffective assistance of counsel, defendant 'must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice. . . .' [Citations.]" (*People v. Hart* (1999) 20 Cal.4th 546, 623–624.)

Ineffective assistance claims based upon the failure to make objections "are routinely denied on the bases that the unasserted objection was nonmeritorious and would have been overruled (see, e.g., *People v. Majors* (1998) 18 Cal.4th 385, 403–404, 75 Cal.Rptr.2d 684, 956 P.2d 1137; *People v. Cudjo* (1993) 6 Cal.4th 585, 616 . . .); the existence of a tactical reason for defense counsel's failure to assert the objection (see, e.g., *People v. Diaz* (1992) 3 Cal.4th 495, 560 . . . ; *People v. Kelly* (1992) 1 Cal.4th 495,

6

520–523 . . .); or the lack of a showing of an outcome prejudicial to the defendant as a result of the introduction of the evidence (see, e.g., *People v. Huggins* (2006) 38 Cal.4th 175, 248–249 . . . ; *People v. Gray* (2005) 37 Cal.4th 168, 208 . . .)." (*People v. Roberts*, *supra*, 195 Cal.App.4th at p. 1131.)

Thus, although defendant has forfeited his claims, we consider their substance in order to dispose of the ineffective assistance argument. (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 82 ["Because, however, he asserts counsel rendered ineffective assistance in failing to preserve the point, we address its substance."]; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1140 ["Accordingly, defendant's alternative claim that counsel rendered ineffective assistance in failing to object must be rejected; counsel undoubtedly realized an objection would have been unavailing."]; *People v. Cunningham* (2001) 25 Cal.4th 926, 1003 [failure to object to unobjectionable material not ineffective assistance].) As we explain, we conclude no error occurred, foreclosing any claim of ineffective assistance of counsel. (See *People v. Gutierrez*, *supra*, 28 Cal.4th at p. 1140.)

### *Admission of Evidence of Vandalism*

According to the district attorney's evidentiary motion, defendant had been charged with misdemeanor vandalism, in violation of Penal Code section 594, for burning his ex-girlfriend's clothing after a May 2010 argument. The trial court ultimately allowed evidence of the vandalism, but not the pending charge.

Section 594 defines vandalism as the malicious destruction or damage of any real or personal property. (§ 594, subd. (a); *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1281.) The parties do not dispute that a conviction for vandalism evinces moral turpitude, and thus could serve as the basis for impeachment. (See *People v. Campbell* (1994) 23 Cal.App.4th 1488, 1492–1495.) However, the vandalism charge was only pending at the time of trial; there was no conviction. Defendant asserts without the conviction, evidence of the vandalism was inadmissible propensity evidence. (See Evid. Code, § 1101, subd. (a).)

A defendant, however, may be impeached with evidence of misdemeanor criminal conduct that has not resulted in a conviction. (*People v. Wheeler* (1992) 4 Cal.4th 284,

7

295–296; *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1522 ["a person can be impeached in a criminal case by evidence of prior misdemeanor *conduct* that involves moral turpitude"]; *People v. Lepolo* (1997) 55 Cal.App.4th 85, 89; cf. *People v. Martinez* (2002) 103 Cal.App.4th 1071, 1080 ["Although the charges pending against [a non-defendant witness] at the time constituted only misdemeanors, the conduct underlying those charges was admissible to impeach despite the lack of a conviction."].)

In *People v. Wheeler, supra,* 4 Cal.4th 284, the Supreme Court considered whether a witness in a criminal proceeding might be impeached with misdemeanor conduct. The court held that evidence of past misdemeanor conduct bearing on a witness's veracity was admissible in a criminal proceeding subject to the trial court's discretion. (*Id.* at p. 295.) The court concluded "[m]isconduct involving moral turpitude may suggest a willingness to lie [citations], and this inference is not limited to conduct which resulted in a felony conviction . . . . [¶] Of course, the admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude." (*Id.* at pp. 295–296.) Subject to the moral turpitude requirement, immoral conduct is admissible for impeachment even though the witness was not convicted, or even if the conduct did not constitute a criminal offense. (*Id.* at p. 297, fn. 7.)

In this case, defendant admitted the prior conduct, burning his ex girlfriend's clothing. He insists, however, he never admitted malicious intent—the element of vandalism imbuing the crime with moral turpitude (see *People v. Campbell*, *supra*, 23 Cal.App.4th at pp. 1492–1495)—and the district attorney never put forward an offer of proof under Evidence Code section 403 that addressed this element of vandalism.

Intent, however, is "rarely susceptible of direct proof and must therefore be proven circumstantially." (*People v. Thomas* (2011) 52 Cal.4th 336, 355.) In a vandalism case, malicious intent may be inferred from the "commission of *any wrongful act* that caused damage." (*People v. Kurtenbach*, *supra*, 204 Cal.App.4th at p. 1282.) Thus, in *People v. Kurtenbach*, the court held malice giving rise to vandalism could be either an " 'actual ill will or intent to injure' " or " ' "presumed" or "implied" from the intentional doing of the act without justification or excuse or mitigating circumstances.' " (*Ibid.*) "Kurtenbach's

8

wrongful act was his participation in the arson of his house. That wrongful act collaterally damaged the neighbors' house, satisfying the definition of vandalism." (*Ibid.*)

Because, as in *People v. Kurtenbach*, defendant's malicious intent impliedly follows from the nature of defendant's wrongful act, we conclude the clothes-burning incident underlying defendant's misdemeanor vandalism charge demonstrated moral turpitude. Therefore, evidence of the vandalism was relevant impeachment evidence bearing on defendant's credibility, rather than impermissible propensity evidence, and could be used for impeachment without violating defendant's due process. (See Evid. Code, § 1101, subds. (a), (c); *People v. Castro* (1985) 38 Cal.3d 301, 315 [carefully considering, but rejecting due process concerns arising from impeachment with a crime like vandalism, "which involves moral turpitude other than dishonesty"].)

We must next consider whether admission of this evidence, even if relevant, ran afoul of Evidence Code section 352, which provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"[E]vidence of misconduct not amounting to a felony is less probative of immoral character than is a prior felony conviction." (*People v. Clark* (2011) 52 Cal.4th 856, 933, citing *People v. Wheeler, supra,* 4 Cal.4th at pp. 296–297 & fn. 7 [nevertheless allowing impeachment with uncharged misconduct].) "[I]mpeachment evidence other than a felony conviction might entail problems of proof, require undue time, or create confusion," and can lead to "protracted questioning" concerning the prior misconduct. (*People v. Clark, supra*, at p. 933, citing *People v. Wheeler, supra,* 4 Cal.4th at pp. 296–297.) Thus, while evidence of prior misconduct is relevant, it remains subject to the trial court's discretion under Evidence Code section 352, which "empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." (*People v. Wheeler, supra,* 4 Cal.4th at p. 296.)

9

A trial court's ruling under section 352 " 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125, italics omitted.) We would only find ineffective assistance of counsel for failing to raise a section 352 objection if defendant can "demonstrate . . . an objection on section 352 grounds would have been successful" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1131) and if it were "reasonably probable a verdict more favorable to [defendant] would have been returned had counsel" objected (*People v. Kelley* (1990) 220 Cal.App.3d 1358, 1375).

Recognizing the vandalism misconduct, as a crime of moral turpitude, had some, albeit limited, probative value on defendant's character for truthfulness (*People v. Wheeler*, *supra*, 4 Cal.4th at p. 295 [" 'it is undeniable that a witness' moral depravity of any kind has "some tendency in reason" [citation] to shake one's confidence in his honesty" ' "]), the trial court appears to have carefully considered and managed any prejudicial effects of admission as if defendant had in fact had made a section 352 objection. First, the district attorney's motion, though it does not cite to section 352, describes the balancing of relevance and prejudice the section requires. Second, questioning on the vandalism was brief, extending over just two transcript pages in a trial whose testimony consumed over 200 pages. (See *People v. Clark*, *supra*, 52 Cal.4th at p. 933 [even though "defendant's admissions of wrongdoing were probed in depth" at some points during trial, "none of the questioning was excessive"].) Third, once the district attorney made his point, the trial court intervened to stop duplicative and unnecessarily detailed questioning and further inquiry into the vandalism, stating: "[w]e've already been there and done that. There was a vandalism"; and "That's fine. Thank you." Fourth, the trial court instructed the jury with CALCRIM No. 316, which reads: "If you find that a witness has committed a crime or other misconduct, you may consider that fact [only] in evaluating the credibility of the witness's testimony. The fact that a witness may have committed a crime or other misconduct does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact

10

and whether that fact makes the witness less believable." (*People v. Anderson* (2007) 152 Cal.App.4th 919, 941 ["CALCRIM No. 316 limits consideration of prior crimes evidence to the issue of credibility"].) We are entitled to presume the jury followed this instruction. (*People v. Holt* (1997) 15 Cal.4th 619, 662.)

We therefore conclude there was no error in the admission of defendant's act of vandalism.

### Fifth Amendment

Defendant also contends his direct examination never "placed" the vandalism at "issue," and the district attorney's questions about it on cross-examination therefore unlawfully compelled defendant to incriminate himself. (See *People v. Bagwell* (1974) 38 Cal.App.3d 127, 140 ["forcing defendant to testify on cross-examination to matters not covered on direct examination, violated her rights under the Fifth and Fourteenth Amendments"].)[2]

"[A] defendant who speaks in his own defense cannot avoid testifying fully. [¶] ' . . . [A] defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination.' " (*Jenkins v. Anderson* (1980) 447 U.S. 231, 236, fn. 3.) Thus, when a defendant "takes the stand and makes a general denial of the crime with which he is charged, the permissible scope of cross-examination is 'very wide.' " (*People v. Cooper* (1991) 53 Cal.3d 771, 822.) If a question on cross-examination is relevant, " ' "[i]t matters not that the defendant's answer . . . might tend to establish his guilt of a

---

[2] *People v. Bagwell* involved an unusual situation in which a defendant "may have been lulled [by the trial court] into a sense of security that if she, on direct examination, made no mention of the Los Angeles affair [(the prior misconduct)], no cross-examination on that subject would be allowed." (38 Cal.App.3d at pp. 139–140.) Though the Court of Appeal reversed, it left the trial court the option, at retrial, of allowing or excluding the evidence of prior misconduct, so long as the court made a reasoned analysis under Evidence Code section 352 and did not mislead defendant. (*People v. Bagwell*, at pp. 140–141.) Here, of course, the district attorney moved to impeach defendant with his prior misconduct before defendant took the stand, and the record discloses no statement by the trial court remotely suggesting defendant could take the stand and avoid questions about past misconduct.

collateral offense for which he could still be prosecuted." ' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 72.) The defendant, in these circumstances, waives his privilege against self-incrimination with respect to uncharged collateral crimes. (*People v. Cooper*, at p. 822; *People v. Thornton* (1974) 11 Cal.3d 738, 760, disapproved on other grounds in *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12, and abrogated on other grounds in *People v. Martinez* (1999) 20 Cal.4th 225, 234.) As the vandalism concerned defendant's credibility and his claim of self-defense, questions about it were permissible.

### *Prosecutorial Misconduct*

Defendant further claims the district attorney's reference to the vandalism in closing argument amounted to prosecutorial misconduct. Specifically, defendant complains the district attorney commented on defendant's "refusal to incriminate himself with respect to the alleged vandalism."

"[T]he Fifth Amendment, . . . in its bearing on the States by reason of the Fourteenth Amendment, forbids . . . comment by the prosecution on the accused's silence." (*Griffin v. California* (1965) 380 U.S. 609, 615.) "Under the rule in *Griffin*, error is committed whenever the prosecutor or the court comments, either directly or indirectly, upon defendant's failure to testify in his defense. It is well established, however, that the rule prohibiting comment on defendant's silence does not extend to comments on the state of the evidence . . . ." (*People v. Medina* (1995) 11 Cal.4th 694, 755.)

Here, defendant did not remain silent, but admitted he vandalized his former girlfriend's clothing. The district attorney's closing argument highlighted the manner in which defendant admitted the act—that he "held back" and only reluctantly was forthright—and tried to tie defendant's manner in which he acknowledged the vandalism to his credibility. While this argument appears to have been only marginally supported by the record—since defendant's answers reflected the tenor of the district attorney's questions (i.e., became more detailed as the district attorney's questions became more detailed)—that does not render the argument unlawful misconduct. Arguments during closing not about *silence*, but about "credibility as a witness" are "in accord with our

12

longstanding rule that when a defendant takes the stand, 'his credibility may be impeached and his testimony assailed like that of any other witness.' " (*Portuondo v. Agard* (2000) 529 U.S. 61, 69, italics omitted.) Such arguments do not violate the Fifth Amendment.

**DISPOSITION**

The judgment is affirmed.

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Dondero, J.