Filed 3/7/14  P. v. Banks CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B245223 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA081449) |
| v. | |
| JEREMIAH BANKS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Eric C. Taylor, Judge.  Affirmed.

Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury found defendant and appellant Jeremiah Banks guilty of two counts of second degree robbery, and one count of evading an officer with willful disregard for safety. On appeal, defendant contends: (1) the trial court erred in denying his motion to sever the first robbery count from the other two charged crimes; (2) the trial court erred in admitting evidence of a prior robbery conviction for impeachment; and (3) uncorroborated eyewitness identification evidence on count 1 was insufficient to support a conviction. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Prosecution Evidence*

On May 31, 2011, Daisy Sahagun was working at a McDonalds restaurant in the City of Torrance. She was sent on an errand to get change. Sahagun took $500 to a bank across the street, got change, put it in her purse, and drove back to the restaurant. She pulled into the McDonald's parking lot and parked. As she was getting out of her car and locking the door, a light gray or light blue Ford Escape pulled up behind her, blocking her car. She saw feet approaching her, and a hand holding a gun pointed down. The man holding the gun said: "Don't make things harder." His voice was calm. Sahagun handed him her purse. She said: "My wallet." The man said he would throw the wallet out. He got into the driver's side of the Ford Escape and drove away.

Sahagun initially told the police she thought the car was a gray Honda CRV. But some time later she saw a Ford Escape, and realized the robber's car was a Ford Escape, not a Honda. She told police her assailant was wearing big sunglasses that covered his eyebrows. She described him as six feet tall and 180 pounds, with a dark complexion and a shaved or bald head. In June 2011, a detective showed Sahagun a six-pack photo identification array, which included defendant's picture. Sahagun was not able to identify her assailant in the six-pack. She identified a photograph of defendant's sunglasses as the glasses the robber wore. At trial in July 2012, Sahagun identified defendant as the robber.

On June 6, 2011, building manager Ricardo Monreal went to a bank in Torrance to deposit rents he had collected.  He drove his car from the bank back to his office.  After Monreal got out of his car, locked the door, and was on his way to the building, a man approached him.  The man was African American, approximately five-eight or five-nine, wearing sunglasses and a hat.  In a "normal" tone of voice, the man said: "Give me your briefcase."  Monreal said he had no money.  The man tried to pull the briefcase away, then said he had a gun.  Monreal relinquished the briefcase.  The man got into a light blue or light gray Ford SUV with no license plates and drove away.  A passerby witnessed the confrontation.  He identified defendant as the robber from a six-pack photo lineup.  At trial, however, the witness could not be sure he could recognize the robber in court.

At some point after the robbery, a detective showed Monreal a six-pack photo array that included defendant's picture.  Monreal was not able to identify the robber from the six-pack. The detective also showed him a photograph of sunglasses and a hat.  Monreal said the sunglasses and hat the robber wore looked similar to those in the photograph.  At a preliminary hearing, Monreal testified he could not be sure defendant was the robber.  At trial, Monreal identified defendant as the robber.

After Monreal was robbed, he called 911.  An alert was broadcast to police radios for a gray SUV with no license plates, and the location of the robbery.  Torrance police officer Matthew Concannon was on patrol not far from the site of the robbery, and heard the call.  While waiting at a red light, he saw across the intersection an SUV that matched the description of the suspect vehicle.  Concannon drove past and observed that the driver, defendant, was a black male wearing a polo or dress shirt, which also matched the description in the call he had heard.  Concannon began to follow the SUV.  When Concannon had backup, he initiated a felony stop.  Defendant slowed to almost a complete stop.  Concannon stopped his car and began taking off his seat belt.  Before Concannon could get out of his police car, defendant sped away.  Defendant then led police on a high speed chase, including on roads leading into or away from LAX, and at speeds occasionally in excess of 90 miles per hour.  Defendant drove through red lights,

3

jumped a curb, and drove the wrong way in traffic. Another officer fired shots at the SUV. Eventually, Concannon disabled defendant's SUV by using a "precision intervention technique" or "pit" maneuver to hit defendant's car with the patrol car. Police took defendant into custody.

When police searched the SUV, they found Monreal's briefcase, sunglasses, and a hat. There was also a bag containing a black replica firearm, and a multi-colored toy gun. A drugstore bag in the car held cough drops and a receipt from a drugstore that shared a parking lot with the bank Monreal had visited earlier that day. The receipt bore the same date as the Monreal robbery, and a time of 9:37 a.m.; the call to police officers regarding the robbery went out at around 11:28 a.m. Police also found a rental car agreement. The SUV was rented in defendant's name.

### *Defense Evidence*

At trial, defendant testified that on the day of the Sahagun robbery, he was at home, alone. His fiancée had his car and she was at work. On the day of the Monreal robbery, he and a friend, Jamal Smith, were going to the Del Amo mall. Defendant was driving his rented Ford Escape. They stopped at a CVS drugstore so defendant could buy cough drops. Defendant left Smith in the car while he went inside. When defendant returned to the parking lot, Smith and the car were gone. Defendant waited for a long time. Just as defendant was walking away, Smith returned. The two argued. Smith said he would walk home. Defendant decided to drive home. At some point he noticed a black briefcase in the car. The briefcase was not his. A blue cap in the car, and the bag containing toy guns belonged to Smith, not defendant.

While driving, defendant noticed Officer Concannon behind him. When Concannon turned on his lights and siren, defendant pulled over and stopped. Concannon got out of the patrol car, looked at defendant, grabbed his gun, and pointed it at defendant. Defendant was afraid and kept driving. He ran some red lights, but was trying to get to an area where people would see him. At one point, another officer fired a gun at him and shot him two or three times. He kept driving and was trying to go to a

4

police station, or "anywhere besides in front of that fire." Defendant denied robbing Monreal. He admitted he pled no contest to a second-degree robbery in 2004.

The jury found defendant guilty of two counts of second degree robbery (Pen. Code § 211), and one count of evading an officer with willful disregard for safety of persons or property (Veh. Code § 2800.2, subd. (a).) The trial court found true allegations that defendant suffered a prior conviction for a serious or violent felony. (Pen. Code §§ 667, subds. (a), (b)-(i), 1170.12, subds. (a)-(d).) The court sentenced defendant to a total prison term of 18 years and four months.

## DISCUSSION

### I. The Trial Court Did Not Abuse its Discretion in Denying Defendant's Motion for Severance

Defendant contends the trial court erred in denying his motion to sever the two robbery charges. We disagree.

Under Penal Code section 954, an accusatory pleading may charge two or more different offenses of the same class of crimes or offenses under separate counts. "When, as here, crimes of the same class are charged together, 'evidence concerning one offense or offenses need not be admissible as to the other offense or offenses before the jointly charged offenses may be tried together. . . .' (§ 954.1.)" (*People v. Cook* (2006) 39 Cal.4th 566, 581, citing *People v. Mendoza* (2000) 24 Cal.4th 130, 161 (*Mendoza*).) The strong preference is for joinder of charged offenses. (*People v. Soper* (2009) 45 Cal.4th 759, 772, 782 (*Soper*).) When charges allege offenses of the same class, " 'the statutory requirements for joinder [are] satisfied,' and defendant 'can predicate error in denying the motion only on a clear showing of potential prejudice.' " (*People v. Vines* (2011) 51 Cal.4th 830, 855 (*Vines*).)

Yet, " ' " '[r]efusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome

5

of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case. [Citations.]' ” ’ [Citations.]” (*Vines, supra,* 51 Cal.4th at p. 855.) We review the trial court's ruling on the severance motion for abuse of discretion. (*Ibid*.)

Defendant argues there was no cross-admissibility of evidence between the two robberies; the evidence supporting count 1 was weak; the evidence supporting the other counts improperly bolstered count 1; and the Sahagun robbery tended to inflame the jury against defendant, allowing the prosecutor to accuse defendant of engaging in a robbery "spree." Defendant asserts the prejudice to him far outweighed the benefits of a joint trial, and the joinder of counts resulted in gross unfairness depriving him of due process of law. His arguments are unavailing.

Evidence concerning the two robberies was cross-admissible to prove, at a minimum, a common design or plan.[1] There were several common features between the two crimes. Both Sahagun and Monreal went to a bank during business hours, transacted business inside, left and drove a short distance, then were accosted by the robber. In both cases, the robber wore large sunglasses, spoke in a calm or normal tone of voice,

---

[1] As explained in *Soper,* the analysis to determine whether uncharged conduct should be admitted under Evidence Code section 1101 is different from the analysis to determine whether properly joined charges should be severed. When considering the admission into evidence of facts underlying an uncharged offense, the People have the burden of establishing the evidence has substantial probative value that clearly outweighs its inherently prejudicial effect. (*Soper*, *supra*, at pp. 772-773.) The burden is reversed in the context of properly joined offenses. (*Id.* at p. 773.) " 'When the offenses are [properly] joined for trial the defendant's guilt of all the offenses is at issue and the problem of confusing the jury with collateral matters does not arise. The other-crimes evidence does not relate to [an] offense for which the defendant may have escaped punishment. That the evidence would otherwise be inadmissible [under Evidence Code section 352] may be considered as a factor suggesting possible prejudice, but countervailing considerations [of efficiency and judicial economy] that are not present when evidence of uncharged offenses is offered must be weighed in ruling on a . . . motion [to sever properly joined charges]. *The burden is on the defendant therefore to persuade the court that these countervailing considerations are outweighed by a substantial danger of undue prejudice.*' [Citations.]" (*Id.* at pp. 773-774, italics in original.)

discreetly displayed a gun, and demanded the victim's bag. Both victims identified the sunglasses found in defendant's car as similar to those the robber wore. In both cases, the robber got into a light gray or light blue Ford SUV and drove away. The two robberies took place in Torrance, within a seven-day period. These common features were admissible to prove defendant acted pursuant to a common plan or design to rob individuals after they had conducted bank business in the city of Torrance. (*People v. Edwards* (2013) 57 Cal.4th 658, 712 [to establish existence of common plan, common features must indicate existence of a plan rather than series of spontaneous acts, but plan need not be distinctive or unusual; it need only exist to support inference that defendant employed a plan in committing the charged offense].)

"If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges." (*Soper,* at pp. 774-775.) However, "even if the evidence underlying these charges would *not* be cross-admissible in hypothetical separate trials, that determination would not establish prejudice or an abuse of discretion by the trial court in declining to sever properly joined charges." (*Id.* at p. 775.) When evidence underlying joined charges is not cross-admissible, we consider " 'whether the benefits of joinder were sufficiently substantial to outweigh the possible "spill-over" effect of the "other-crimes" evidence on the jury in its consideration of the evidence of defendant's guilt of each set of offenses.' [Citations.]" (*Id.* at p. 775; *People v. Myles* (2012) 53 Cal.4th 1181, 1201 (*Myles*).)

Here, even assuming evidence of the two robberies was not cross-admissible, the trial court could reasonably conclude there was little likelihood of prejudicial "spillover" effect. None of the charges was unusually likely to inflame the jury against defendant. No one was injured in the robberies. While defendant's evasion of police was dangerous, only he was injured. Neither robbery charge was supported by significantly stronger evidence. Neither victim was able to identify defendant as the perpetrator from a photographic lineup, although both identified his sunglasses and described a similar vehicle used in the robbery. While there may have been less evidence identifying

7

defendant as the perpetrator in the Sahagun robbery than the evidence identifying him as the perpetrator of the Monreal robbery, the trial court could reasonably conclude any imbalance was not so significant that it would alter the outcome on either robbery count. "A mere imbalance in the evidence . . . will not indicate a risk of prejudicial 'spillover effect,' militating against the benefits of joinder and warranting severance of properly joined charges. [Citation.] Furthermore, the benefits of joinder are not outweighed – and severance is not required – merely because properly joined charges might make it more difficult for a defendant to avoid conviction compared with his or her chances were the charges to be separately tried." (*Soper, supra,* 45 Cal.4th at p. 781.) As to the fourth factor, the joinder of charges did not result in a capital offense. (*Myles, supra,* 53 Cal.4th at p. 1202.)

To establish error in the trial court's ruling denying his motion to sever the charges, defendant was required to make a " ' "clear showing of prejudice to establish that the trial court abused its discretion . . . ." ' [Citation.] A trial court's denial of a motion to sever properly joined charged offenses amounts to a prejudicial abuse of discretion only if that ruling ' " ' " 'falls outside the bounds of reason.' " ' " ' [Citation.]" (*Soper, supra,* 45 Cal.4th at p. 774, italics omitted.) Defendant did not meet this burden here.

Similarly, the trial court's denial of severance did not result in actual unfairness so great that it denied defendant due process or deprived him of his right to a fair trial. (*Soper, supra,* 45 Cal.4th at p. 783; *Cook, supra,* 39 Cal.4th at p. 583.) Where evidence is cross-admissible, any "spill-over effect" is proper. (*People v. Ruiz* (1988) 44 Cal.3d 589, 607.) But, cross-admissibility aside, no charge in this case was any more emotionally charged or likely to inflame than the others. "[T]he consolidated offenses were factually separable. Thus, there was a minimal risk of confusing the jury or of having the jury consider the commission of one of the joined crimes as evidence of defendant's commission of another of the joined crimes." (*Mendoza, supra,* 24 Cal.4th at p. 163; *Soper, supra,* 45 Cal.4th at p. 784.) While there were similarities between the two robberies, the evidence supporting each was factually distinct, and there was sufficient

8

distinct evidence to support a conviction on each charge.  Defendant has not met the high burden of establishing a joint trial of all of the charges resulted in a grossly unfair trial.**2** (*Soper, supra,* 45 Cal.4th at p. 783.)

## II.    The Trial Court Did Not Err in Allowing Impeachment with Defendant's Prior Robbery Conviction, or in Refusing to Sanitize the Conviction

Before trial, the court ruled it would allow the People to impeach defendant with a February 2004 robbery conviction.  Although the court initially offered the parties a choice of describing the prior conviction as "robbery" or as a "prior serious felony theft conviction," the court subsequently concluded the parties could describe the conviction as a "serious violent theft felony conviction."  Defense counsel objected to the use of the term "violent," and argued the prior should be described as a "serious felony theft involving moral turpitude."  The court indicated there should be an accurate description of the prior.  When defense counsel continued to object to the use of "violent" in the description, the court concluded it would simply allow "robbery."**3**  On appeal, defendant

---

**2**      Defendant has requested we take judicial notice of certain facts regarding the demographics and location of the City of Torrance.  He contends that, given the demographics and location of Torrance, evidence regarding the vehicle he used in the robberies, or the victims' general description of him, was not sufficiently distinctive to establish identity, or a common plan under Evidence Code section 1101.  However, this evidence was not offered or presented in the trial court.  On appeal we neither reweigh the evidence, nor conduct a de novo review of a trial court's ruling on a motion for severance.  (*Newton-Enloe v. Horton* (2011) 193 Cal.App.4th 1480, 1492, fn. 3 [denying request for judicial notice where plaintiffs did not satisfactorily explain the relevance of materials, which also were not provided to the trial court].)  Instead, we review the trial court's ruling for an abuse of discretion, based on the record before the trial court when it made the ruling.  (*Soper, supra*, 45 Cal.4th at p. 774.)  We exercise our discretion to decline to take judicial notice of these materials that were not presented below. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325; *Alameda County Flood Control & Water Conservation Dist. v. Department of Water Resources* (2013) 213 Cal.App.4th 1163, 1199, fn. 37.)

**3**      The court noted: "Serious violent felony theft offense involving moral turpitude— really, it just complicates something that – to the extent that sanitizing it just doesn't make any sense."

argues the trial court erred in admitting the prior conviction as impeachment evidence, or, alternatively, the court erred in refusing to sanitize the prior conviction to omit the violent character of the offense.  We find no abuse of discretion.

The California Supreme Court recently summarized the principles governing the admission of prior convictions for impeachment: " ' "[T]he admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude." ' [Citation.]  Beyond this, the ' "trial courts have broad discretion to admit or exclude prior convictions for impeachment purposes. . . ." ' [Citation.]  'When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify.' [Citation.]" (*People v. Edwards, supra,* 57 Cal.4th at p. 722.) " 'Although the similarity between the prior convictions and the charged offenses is a factor for the court to consider when balancing probative value against prejudice, it is not dispositive.' [Citation.]"[4] (*Ibid.*)

It is well established that robbery involves moral turpitude.  (*People v. Turner* (1990) 50 Cal.3d 668, 705; *People v. Collins* (1986) 42 Cal.3d 378, 395.)  Further, "any felony conviction evincing moral turpitude, as here, 'has some "tendency in reason" (Evid. Code, § 210) to shake one's confidence in [a witness's] honesty.' [Citation.]" (*People v. Campbell* (1994) 23 Cal.App.4th 1488, 1496, fn. omitted.)  "California courts have repeatedly held that prior convictions for burglary, robbery, and other various theft-related crimes are probative on the issue of the defendant's credibility." (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925.)

---

[4]    As explained in *People v. Clark* (2011) 52 Cal.4th 856, 931, fn. 20 (*Clark*): "The passage of Proposition 8 in 1982 led to the enactment of article I, section 28 of the California Constitution.  Article I, section 28, subdivision (f)(2) provides in pertinent part that 'relevant evidence shall not be excluded in any criminal proceeding. . . .' Subdivision (f)(4) allows prior felony convictions to 'be used without limitation for purposes of impeachment.' (Cal. Const., art. I, § 28, subd. (f)(4).)"

The trial court could also reasonably determine the 2004 conviction was not unduly remote. By the time of trial, eight years had passed since the 2004 conviction. Yet, as the court explained, defendant was convicted in 2004, but "just got out of prison off parole only in 2010." His arrest in the instant case violated his parole. (See *People v. Carpenter* (1999) 21 Cal.4th 1016, 1056 [defendant's incarceration for significant portion between prior conviction and trial reduced strength of claim that he led a legally blameless life].) Even apart from defendant's imprisonment, an eight-year-old conviction is not exceedingly remote. (*People v. Campbell, supra,* 23 Cal.App.4th at p. 1496.)

As to the similarity between the prior conviction and the charged offenses, *Clark, supra,* 52 Cal.4th 856, is instructive. In *Clark*, the defendant contended the trial court erred in allowing the prosecution to impeach him with prior convictions that were identical to the charged offenses. Our high court rejected the argument. The court explained the trial court "found the robbery convictions highly probative of defendant's credibility. The court also weighed the prejudicial impact that admission of the robbery convictions might have on the jury's consideration of the robbery counts and determined that its potential prejudice did not outweigh its probative value . . . . [T]here were no other prior felony convictions involving moral turpitude that could have been admitted for impeachment purposes. [Citation.] Thus, to exclude the robbery priors would have clothed defendant in a ' " 'false aura of veracity.' " ' [Citation.]" (*Clark*, at p. 932.)

The situation in this case was similar. Defendant had only one prior felony conviction available for impeachment. Excluding that conviction would have allowed him a "false aura of veracity." The trial court implicitly concluded the prejudicial impact did not outweigh the conviction's probative value. We find no abuse of discretion. We also find no abuse of discretion in the trial court's conclusion that a vague description of the prior conviction could be more prejudicial than identifying it as a robbery. "It is clear that the court engaged in a weighing process, that it exercised discretion" in deciding that identifying the prior conviction as a robbery was more appropriate than sanitizing it as a serious felony theft involving moral turpitude. (*People v. Little* (2012) 206 Cal.App.4th 1364, 1379 [trial court's failure to sanitize a prior theft-related conviction by describing it

11

as crime of moral turpitude was not error].) " ' "The record as a whole shows the court was well aware of, and consistently performed, its duty … to balance the probative value of evidence against any prejudicial effect." [Citation.]' " (*Ibid.*)

## III. Substantial Evidence Supported a Conviction on Count 1; the Trial Court Did Not Err in Failing to Sua Sponte Elaborate on CALCRIM No. 315

In his final argument, defendant asserts: (1) Sahagun's in-court identification of defendant was invalid; and (2) CALCRIM No. 315 was insufficient to fully inform the jury about the fallibility of eyewitness identifications.

Defendant's contention regarding the validity of Sahagun's in-court identification is essentially an argument that there was insufficient evidence to support a conviction on count 1. We disagree. "Robbery can be proved by one eyewitness." (*People v. Wilson* (1968) 266 Cal.App.2d 106, 108.) There may have been reason for the jury to be skeptical of Sahagun's in-court identification of defendant as the robber. Yet, nothing in the record before us indicates the in-court identification was physically impossible, or inherently improbable, such that we may reject it on appeal as invalid. (*People v. Young* (2005) 34 Cal.4th 1149, 1181 (*Young*) [unless inherently improbable or physically impossible, testimony of a single witness is sufficient to support a conviction].)

Any weaknesses in Sahagun's in-court identification implicated only the weight of the evidence, not its admissibility. It was for the jury to determine how much weight, if any, to give to Sahagun's in-court identification of defendant. (*People v. Hughes* (1969) 271 Cal.App.2d 288, 291.) On appeal, we must draw all reasonable inferences in favor of the judgment, and we may not reweigh the evidence. "[W]hen the circumstances surrounding the identification and its weight are explored at length at trial, where eyewitness identification is believed by the trier of fact, that determination is binding on the reviewing court." (*In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497.)

Moreover, Sahagun's in-court identification was not the only evidence implicating defendant. Soon after the robbery, Sahagun informed police the robber drove away in a light gray or light blue Ford Escape, the color, make, and model of car defendant had rented. She identified defendant's sunglasses as those the robber wore. Defendant

12

carried out a similar robbery in a nearby location, with the same car, only days later. There was substantial evidence to support the conviction on count 1. Further, defendant has not identified any legal error concerning the in-court identification such that any weaknesses in that one aspect of the evidence invalidate the conviction.

We also must reject defendant's argument that CALCRIM No. 315 was insufficient to instruct the jury on California law regarding eyewitness testimony.[5] Defendant contends the jury should have been informed "as to how each of the CALCRIM No. 315 factors should be analyzed in terms of the eyewitness's ability to perceive and recall a face or event and the potential for mistaken identification." Yet, as our high court explained with respect to the equivalent CALJIC No. 2.92, "[d]efendant is entitled to an instruction that focuses the jury's attention on facts relevant to its determination of the existence of reasonable doubt regarding identification, by listing, in a neutral manner, the relevant factors supported by the evidence. The instruction should not take a position as to the impact of each of the psychological factors listed; it should also list only factors applicable to the evidence at trial, and should refrain from being unduly long or argumentative." (*People v. Johnson* (1992) 3 Cal.4th 1183, 1230.) CALCRIM No. 315 met these requirements in this case.

---

[5] CALCRIM No. 315 instructs the jury that in evaluating identification testimony, it is to consider numerous factors, including: how well could the witness see the perpetrator; how closely was the witness paying attention; was the witness under stress when she made the observation; how does the witness's description compare to the defendant; did the witness ever fail to identify the defendant; are the witness and defendant of different races; was the witness able to identify the defendant in a photographic lineup; and the amount of time between the event and when the witness identified the defendant. The instruction closes with the admonition that the People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime, and, if the People have not met that burden, the jury must find the defendant not guilty.

Further, the court's analysis in *People v. Wright* (1988) 45 Cal.3d 1126, is applicable here: "An instruction that 'explained' the influence of the various psychological factors would of necessity adopt the views of certain experts and incorporate the results of certain psychological studies while discounting others. It would require the trial judge to endorse, and require the jury to follow, a particular psychological theory relating to the reliability of eyewitness identifications. Such an instruction would improperly invade the domain of the jury, and confuse the roles of expert witnesses and the judge." (*Wright,* at p. 1141.) Thus, our high court has rejected the argument defendant makes here regarding the need for additional explanation of the relevant eyewitness identification factors.

In addition, although defendant now argues additional instructions should have been given, he did not request any supplemental instructions on this issue below. (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 849 [party may not argue on appeal that instruction correct in law was incomplete unless the party has requested clarifying or amplifying language].) In sum, he has identified no reversible error.[6]

---

[6] Defendant contends eyewitness identifications should, as a matter of law, be inadmissible unless the identification is corroborated with independent evidence. However, this is not the law in California. This court is bound by relevant precedent, including, as noted above, decisions from the California Supreme Court indicating the testimony of one witness is sufficient to support a conviction, unless the testimony is physically impossible or inherently improbable. (*Young, supra,* 34 Cal.4th at p. 1181; *Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455.) The same principle applies to defendant's argument contending there are categorical flaws in current California law regarding the admission of prior convictions as impeachment evidence.

14

## DISPOSITION

The judgment is affirmed.

                                                                            BIGELOW, P. J.

We concur:

RUBIN, J.

GRIMES, J.