Filed 6/2/15  P. v. Guerrero CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. JIOVANI GUERRERO, Defendant and Appellant. | D064860 (Super. Ct. No. SCD249146, SCE327983) |

APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed in part, reversed in part, and remanded.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Kelley Johnson and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

In a prior case (San Diego Super. Ct. No. SCE327983) defendant Jiovani Guerrero entered a plea agreement under which he pleaded guilty to one count of transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)) and admitted the truth of

three "prison prior" allegations (Pen. Code, §§ 667.5, subd. (b) & 668).[1]  He received a sentence of a stipulated seven-year prison term, comprised of a four-year stipulated term for the drug transportation violation and three terms of one year each for the prison prior allegations, stayed to permit him to participate in drug court.  However, less than three months later, an information was filed in the present case (San Diego Super. Ct. No. SCD249146) charging Guerrero with felony evading an officer with reckless driving (Veh. Code, § 2800.2, subd. (a), count one), misdemeanor hit and run driving (Veh. Code, § 20002, subd. (a), count two), misdemeanor vandalism (§ 594, subd. (a), (b)(2)(A), count three), misdemeanor driving on a suspended license (Veh. Code, § 14601.1, subd. (a), count four), and misdemeanor possession of paraphernalia used for narcotics (former Health & Saf. Code, § 11364.1, subd. (a), count five).  The information also contained three prison prior allegations (§§ 667.5, subd. (b) & 668) and eight probation denial prior convictions (§ 1203, subd. (e)(4)).

A jury convicted Guerrero of all counts in the present case and, in a bifurcated proceeding, the trial court found true the prison prior allegations.  The court sentenced Guerrero in the present case to a term of eight months in prison on count one, a term of 180 days in local custody on count two, stayed pursuant to section 654, a one-year term in local custody on count three, two terms of 180 days in local custody on counts four and five to be served concurrently, and three 1-year terms for the prison prior allegations.  The court also imposed the stipulated four-year prison term based on his guilty plea (in

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

2

the prior case) to the count alleging a violation of Health and Safety Code section 11379, subdivision (a), to be served consecutive to the term imposed in case No. SCD249146, for a total term of seven years eight months in prison plus a one-year term in local custody. The court also imposed restitution and parole revocation fines, a drug program fee, and other fees.

On appeal, Guerrero argues (1) the evidence was insufficient to support the vandalism conviction, (2) the court should have stayed under section 654 the term for his conviction for driving on a suspended license, and (3) the imposition of a drug program fee was improper.

I

FACTS

On the evening of June 24, 2013, San Diego Police Officers McGruder and Yee were patrolling when they saw a car parked illegally in an alley known for drug dealing. However, after they ran the plates and determined the car was not reported stolen, they continued on to other matters. However, they later saw the car leave the alley and, after it "just took off" at a high rate of speed, the officers got back into their patrol car, activated the patrol car's lights and siren, and pursued it. The driver (later identified as Guerrero) did not yield. Instead, during the ensuing pursuit, Guerrero broke numerous traffic laws.

The pursuit ended temporarily when Guerrero turned into a cul-de-sac and Officers McGruder and Yee attempted a "hot stop." They exited their car with firearms drawn and ordered the occupants to "put [their] hands up." The front passenger complied but the driver (Guerrero) was still attempting to drive the car, revving the engine and

3

moving the car forward and then reversing. Officer McGruder approached the passenger side, shattered the window, saw Guerrero was driving, and ordered him to take the keys out of the ignition. Instead, Guerrero reversed the car, which hit the patrol car and damaged the patrol car's front "push-bumper." Guerrero was able to drive off, and the ground pursuit was temporarily terminated.

Officer Gonzalez, a tactical flight officer flying that night in a police helicopter known by the acronym ABLE (for Airborne Law Enforcement), flew to assist the officers on the ground. Officer Gonzalez video-recorded the part of the pursuit at which he was present and the recording was played for the jury. After Guerrero drove away from the cul-de-sac, the helicopter followed to where Guerrero stopped and got out of the car. Officers responded to the location and eventually arrested Guerrero at an apartment complex in that area. Officers found a bulbous glass pipe of a type commonly used to smoke narcotics on Guerrero's person.

The car driven by Guerrero had extensive damage to its front left fender and right rear fender. An exhibit from the DMV showed Guerrero's driver's license had been suspended in December 2003 and never reinstated.

II

ANALYSIS

A. Substantial Evidence Supports the Misdemeanor Vandalism Conviction

Guerrero contends the evidence was insufficient to support the misdemeanor vandalism conviction because there was no evidence he intended to damage the police car when he evaded the officers by driving away.

4

Section 594, subdivision (a), provides that every person who "maliciously" defaces, damages or destroys property belonging to another is guilty of vandalism and where, as here, the amount of damage is less than $400, the offense is a misdemeanor. (*Id*. at subd. (b)(2)(A).) "[T]he term 'maliciously,' defining the requisite mens rea of the offense, 'import[s] a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.' " (*People v. Campbell* (1994) 23 Cal.App.4th 1488, 1493, citing § 7, subd. 4.)

Ordinarily, the use of the term "malice" or "maliciously" in a penal statute is an expression of general criminal intent. (See *People v. Atkins* (2001) 25 Cal.4th 76, 85-86 [explaining the difference between general and specific intent in the context of the arson statute].) Use of the term "malice" does not transform an offense into a specific intent crime, but the "malice requirement ensures that the act is 'done with a design to do an intentional wrongful act . . . without any legal justification, excuse or claim of right.' " (*Id*. at p. 88.) Requiring evidence the defendant acted with malice ensures the proscribed act was "a deliberate and intentional act, as distinguished from an accidental or unintentional . . . act . . . ." (*Ibid.*)

Although the vandalism statute does require proof the defendant "maliciously" defaced, damaged or destroyed another person's property, vandalism is a general intent crime and the requisite mens rea can be demonstrated by proof the defendant intended to do the act that caused the resulting harm. In *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, this court recently addressed whether a conviction for vandalism could be sustained when a neighboring home suffered damage caused by a defendant's

5

wrongful act of setting fire to his own property, but there was no evidence the defendant intended to damage the neighboring home. The jury was instructed the "malice" required for vandalism is when the defendant acted by " 'intentionally do[ing] a wrongful act or when he or she act[ed] with the unlawful intent to annoy or injure someone else' " (*id.* at p. 1281), and during deliberations the jury asked (as to the vandalism count) whether the " ' "wrongful act" need to be directed towards property not owned by the defendant?' " (*Ibid.*) The trial court instructed the jury that the wrongful act " 'need not be "directed" towards anyone.' " (*Ibid.*) The defendant asserted that was error, arguing vandalism required the defendant act maliciously toward the victim and therefore the jury should have been instructed the wrongful act needed to be directed toward the victim of the damage. (*Ibid.*) This court rejected the defendant's argument, explaining at page 1282:

> "To commit vandalism a defendant must do an act 'maliciously.
> [Citation.] However, as we have stated, a person acts maliciously
> *either* when acting with 'a wish to vex, annoy, or injure another
> person' *or* with the 'intent to do a wrongful act.' [Citation.] As our
> Supreme Court has explained, the first type of malice . . . is known
> as '[m]alice in fact' and 'consists of actual ill will or intent to injure.'
> (*In re V.V.* (2011) 51 Cal.4th 1020, 1028 . . . .) However, the second
> type of malice . . . is known as 'malice in law.' (*In re V.V.*, at
> p. 1028.) 'Malice in law may be "presumed" or "implied" from the
> intentional doing of the act without justification or excuse or
> mitigating circumstances.' (*Ibid*.) [¶] Based on the definition of
> 'malice' contained in section 7, subdivision 4, in making a finding on
> whether Kurtenbach acted maliciously when damaging the
> neighbors' house the jury was not limited to the theory of *malice in
> fact,* and it was thus not required to find that Kurtenbach acted with
> an intent to do damage to that house. Because of the theory of
> *malice in law,* the jury could find that Kurtenbach acted maliciously
> based on his commission of *any wrongful act* that caused damage to
> the neighbors' house. In this case, Kurtenbach's wrongful act was
> his participation in the arson of his house. That wrongful act
> collaterally damaged the neighbors' house, satisfying the definition

6

of vandalism. Because the theory of *malice in law* was applicable to the vandalism count, the trial court was not required, as Kurtenbach claims, to instruct the jury that the wrongful act had to be directed toward causing damage to the neighbors' house. It properly instructed the jury that '[t]he wrongful act need not be "directed" towards anyone.' "

We believe the reasoning of *Kurtenbach* is controlling here. Guerrero does not dispute the evidence was ample to show he intentionally committed a wrongful act (of evading the police) and, in doing so, damaged the police car. It is unnecessary to show Guerrero intentionally hit the police car because, under the implied in law aspect of malice, "the jury could find that [Guerrero] acted maliciously based on his commission of *any wrongful act* that caused damage to the [police car]." (*People v. Kurtenbach, supra,* 204 Cal.App.4th at p. 1282.) Guerrero argues *Kurtenbach's* rationale should be limited to cases in which the property damage giving rise to the vandalism charge was the natural consequence of an intentional wrongful act that was itself an inherently destructive act. However, Guerrero cites no authority for limiting implied-in-law malice under section 7, subdivision 4, to inherently destructive acts, and we decline to impose such a limitation here, particularly when (as here) the wrongful act involved conduct that carries the very risk of harm to property that in fact ultimately resulted from Guerrero's conduct.[2] We conclude there was substantial evidence to support the conviction for misdemeanor vandalism as alleged in count three.

---

[2]    The wrongful act for felony evading an officer with reckless driving required proof Guerrero fled or attempted to elude a pursuing peace officer in violation of Vehicle Code section 2800.1 "and the pursued vehicle is driven in a willful or wanton *disregard for the safety of* persons or *property . . . .*" (Veh. Code, § 2800.2, subd. (a), italics added.)

7

Guerrero also contends, and the People concede, that if we conclude substantial evidence supports his conviction of misdemeanor vandalism, his sentence for that conviction should have been stayed under section 654 because it arose from the same intent and objective as his conviction for felony evading an officer with reckless driving (Veh. Code, § 2800.2, subd. (a), count one). We accept the People's concession and, on remand, the trial court is directed to amend the sentence to reflect the sentence on count three is stayed pursuant to section 654.

B. The Concurrent Sentence for Driving on a Suspended License Was Proper

Guerrero asserts the trial court should have stayed under section 654 his concurrent sentence for the conviction of misdemeanor driving on a suspended license (Veh. Code, § 14601.1, subd. (a), count four) because it stemmed from the same act and objective as the conviction for felony evading. He asserts that *People v. Jones* (2012) 54 Cal.4th 350 (*Jones*), by overruling *In re Hayes* (1969) 70 Cal.2d 604 and holding instead that "[s]ection 654 prohibits multiple punishment for a single physical act that violates different provisions of law" (*Jones,* at p. 358), compels the conclusion that his single criminal act here—of evading police while driving on a suspended license—can only be punished once.

*Applicable Law*

Section 654, subdivision (a), provides in pertinent part, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654

8

" 'precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts. "Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor." [Citations.] "[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." [Citation.]' " (*People v. Spirlin* (2000) 81 Cal.App.4th 119, 129.) However, if the defendant harbored "multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct." (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267-268.)

Whether section 654 applies under the facts of any specific case "is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

*Analysis*

We are convinced there was some evidence from which the trial court could conclude section 654 did not preclude punishment for both the driving on a suspended license conviction and the evading police conviction. The evidence showed Guerrero

9

first drove the car away from its parking spot in the alley before police even began to follow it. After the officers observed the vehicle driving off, at a speed in excess of the normal limits, they decided to pursue the vehicle and only then did they activate the lights and siren in their patrol car. There was therefore some evidence to permit the conclusion that Guerrero first drove on a suspended license and, subsequent to that crime and in reaction to the lights and siren of the patrol car, formed the new intent and purpose of (and began engaging in the conduct forming the basis for) the felony evading police crime.

Guerrero argues this analysis is foreclosed by *Jones's* decision to overrule *Hayes*. However, Guerrero's argument ignores that *Jones* also cited *In re Michael B.* (1980) 28 Cal.3d 548, 556-557, which upheld (albeit by reliance on *Hayes*) multiple punishments for vehicle theft and driving without a license for a defendant who stole a car and then drove it, and *People v. Butler* (1986) 184 Cal.App.3d 469, 471-474, which upheld (again relying on *Hayes*) multiple punishments for vehicular manslaughter and felony hit and run for a defendant who struck a car, killed the victim and then left the scene. The *Jones* court specifically noted that, although it disapproved *Hayes*, "it appears that *Michael B.* [and] *Butler . . . may have been correct even apart from Hayes*." (*Jones, supra*, 54 Cal.4th at pp. 357-358, italics added.) Thus, *Jones* apparently approved the imposition of multiple punishments on facts analogous to those considered in *Michael B.* and *Butler,* and the facts here are more like those confronted by the courts in *Michael B.* and *Butler* (where the offenses were committed serially) than by the facts of *Jones* (where the offenses were committed simultaneously). We conclude *Jones* does not bar the trial court

from impliedly finding section 654 did not bar imposition of separate sentences for Guerrero's separate convictions of evading police and driving on a suspended license.

    C.  <u>Guerrero Forfeited His Challenge to Imposition of the Drug Program Fee</u>

Guerrero asserts the court erred by imposing on him a drug program fee without determining his ability to pay that fee.

With specified exceptions, Health and Safety Code section 11372.7, subdivision (a), requires defendants convicted of offenses listed in chapter 6 of division 10 of the Health and Safety Code to pay a drug program fee. However, an exception to the mandatory fee is the "ability to pay" aspect of Health and Safety Code section 11372.7, subdivision (b), which provides: "The court shall determine whether or not the person who is convicted of a violation of this chapter has the ability to pay a drug program fee. If the court determines that the person has the ability to pay, the court may set the amount to be paid and order the person to pay that sum to the county in a manner that the court believes is reasonable and compatible with the person's financial ability. In its determination of whether a person has the ability to pay, the court shall take into account the amount of any fine imposed upon that person and any amount that person has been ordered to pay in restitution. If the court determines that the person does not have the ability to pay a drug program fee, the person shall not be required to pay a drug program fee."

The court imposed the fee without an express determination of Guerrero's ability to pay that fee. However, he did not object below to this omission. The People assert his failure to object results in forfeiture of any claim of error under the rationale of *People v.*

11

*McCullough* (2013) 56 Cal.4th 589. In *McCullough*, the court held that imposition of a "booking fee" under Government Code section 29550.2 requires the People to show the defendant's ability to pay such fee, "[b]ut a defendant who does nothing to put at issue the propriety of imposition of a booking fee forfeits the right to challenge the sufficiency of the evidence to support imposition of the booking fee on appeal. . . ." (*McCullough,* at p. 598.)

Guerrero asserts *McCullough* is not controlling because *McCullough* recognized Health and Safety Code section 11372.7 provided more procedural requirements or guidelines for the ability-to-pay determination than did the statute authorizing imposition of booking fees (*People v. McCullough, supra*, 56 Cal.4th at pp. 598-599), and Guerrero argues the Supreme Court (by its grant of review in a number of cases involving the forfeiture rule when fees are to be imposed) has implied that *McCullough* has left open the application of the forfeiture rule to statutes other than imposition of a "booking fee" under Government Code section 29550.2. However, in two of the cases in which review was granted, the Supreme Court has subsequently filed opinions in which it adhered to *McCullough* and concluded a challenge to the sufficiency of the evidence on the ability to pay question is forfeited if not raised at trial. In *People v. Trujillo* (2015) 60 Cal.4th 850 (addressing probation supervision and presentence investigation fees imposed under § 1203.1b) and its companion case, *People v. Aguilar* (2015) 60 Cal.4th 862 (addressing probation-related costs and an order for reimbursement of fees paid to appointed trial counsel under §§ 1203.1b & 987.8, respectively), our Supreme Court adhered to *McCullough* and concluded that a defendant forfeits his or her right to challenge on

12

appeal the imposition of those costs if he or she did not interpose that objection at trial. (*Trujillo,* at pp. 857-861; *Aguilar,* at pp. 866-870.)

Although neither *Trujillo* nor *Aguilar* applied the forfeiture rule to the drug program fee, we are unpersuaded by Guerrero's claim that an approach different from that used in *McCullough*, *Trujillo* and *Aguilar* should be employed merely because the drug program fee has procedural protections not found in the booking fee statute. That same argument gained no traction in *Aguilar* where the court noted that "defendant here relies on the specification in sections 1203.1b and 987.7 of certain procedural requirements not contained in the booking fee statutes [citations] in an effort to distinguish our decision in [*McCullough*], which held that challenges to the imposition of booking fees are forfeited unless made at sentencing. For the reasons discussed in our opinion in [*Trujillo*], the effort is unavailing." (*People v. Aguilar, supra,* 60 Cal.4th at p. 866.) We can perceive no meaningful difference, at least for purposes of the forfeiture rule, between the statutes considered in *McCullough*, *Trujillo* and *Aguilar* and the drug program fee at issue here. We follow *McCullough*, *Trujillo* and *Aguilar* and conclude that, because Guerrero did not object below to the "ability to pay" finding, he cannot interpose that claim on appeal.

D. Challenges to the Other Fines Imposed

Guerrero contends the restitution and parole revocation fines imposed on him at sentencing must be set aside because the trial court erroneously believed it could not impose the statutory minimum but instead was required to follow the formula set out in section 1202.4, subdivision (b)(2), and it then erroneously applied that formula. The People concede that, on this record, it appears the trial court may have misapplied the

13

formulas it intended to use in calculating the restitution and parole revocation fines, and therefore concede the proper remedy is to vacate these fines and remand the matter to permit the trial court to exercise its discretion to recalculate these fines. We accept the People's concession and therefore vacate these fines and remand the matter to the trial court to permit it to exercise its discretion in calculating these fines.

## DISPOSITION

The sentence is vacated and remanded with directions (1) to stay under section 654 the sentence imposed in San Diego superior court No. SCD249146 for the conviction for misdemeanor vandalism (count three), and (2) to reconsider and reimpose the appropriate restitution and parole revocation fines for defendant's convictions. In all other respects, the judgment is affirmed.

McDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.

14